Allan M. McGarvey
Jinnifer Marriman
Dustin Leftridge
McGARVEY LAW
345 1ST Ave. E.
Kalispell, Montana, 59901
(406)752-5566
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### Great Falls Division

| | |
|---|---|
| BILLIE SCHULL and WORKER GROUP [1] <br><br> Plaintiffs, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Cause No. _____ <br><br><br> **COMPLAINT** |

<u>Jurisdiction</u>

1.      In this action, the Plaintiffs, who are the individuals named on Exhibit A and are former workers at the mill and mine operated by W.R. Grace in the period July 1, 1963-June 30, 1973, or personal representatives of deceased workers (collectively herein "Worker Group"), seek declaratory and injunctive relief against Defendant with respect to claims handling related duties.

---

[1] The "Worker Group" Plaintiffs are those listed in the attached Exhibit A.

2.     Defendant Zurich American Insurance Company (herein "Zurich") is a New York corporation with its principal place of business in Illinois.

3.     Plaintiff Billie Schull is a citizen and resident of Montana. Most Plaintiffs in the Worker Group are citizens of Montana residing in Montana; none of the are citizens of, or reside in, Illinois or New York. Each named Plaintiff or Plaintiff's decedent pursued a claim for personal injuries incurred in Montana. The claim settlement conduct alleged herein occurred in Montana with respect to claims in Montana civil actions pending in Great Falls, Montana. Upon information and belief, no third-party buyer as described in this pleading is subject to service of process of this Court.

4.     This Court has jurisdiction of this case pursuant to 28 U.S.C. §1332 because there is both minimal and complete diversity of citizenship, and because the amount in controversy for on the claim of each Plaintiff in this action exceeds the sum or value of $75,000.00, exclusive of interest and costs.

Allegations Common to All Causes of Action

5.     Zurich, formerly known as Maryland Casualty Company (herein "MCC"), provided the worker safety program and health monitoring services for workers at the W.R. Grace Mill in Libby Montana. In so doing, it not only breached its duty to warn workers, but it engaged in affirmative actions to conceal the asbestos exposure risk. Each Plaintiff has presented a claim that Zurich is liable for that Plaintiff's (or

Plaintiff's decedent's) asbestos-related disease injuries for such breach. All of the Worker Group "Personal Representative" Plaintiffs represent the heirs and estates of workers who died from asbestos-related disease including lung cancer and terminal asbestosis, and which estates have paid or are subject to liens and claims for decedent's asbestos disease related care. All other Worker Group Plaintiffs are living and have lung cancer, or advanced-stage asbestosis with severe pulmonary impairment and/or supplemental oxygen dependency. (Herein, such claims are collectively referred to as "Accrued Claims.")

6.      Zurich insured the Accrued Claims through a combination of insurance policies and self-insurance.

7.      The liability of Zurich for the Plaintiffs' Accrued Claims was and is reasonably clear, including as demonstrated by the facts, summary judgment and appellate rulings, and jury verdict and judgment in the Hutt v. Maryland Casualty Company litigation.

8.      On March 25, 2020, the Montana Supreme Court issued a ruling recognizing clear liability of Zurich, formerly MCC, for breach of its duty and failure to warn workers:

> MCC owed Hutt and other Grace workers a direct common law duty under Restatement (Second) of Torts § 324A(b)-(c) to use reasonable care under the circumstances to warn them of the known risk of exposure to airborne asbestos in the Grace workplace(s)….

3

> [I]t is undisputed that MCC made no independent effort to warn Grace workers of the asbestos dust hazard in and about Grace's Libby area facilities and operations.

MCC v ACC at pars. 57, 17.

9.    On February 17, 2022, a jury found that the warning duty to workers had not been met by any of MCC's actions of care or circumstances and that MCC had acted with malice. The verdict is consistent with the opinion of Justice Gustafson, concurred in by Justices Shea and McKinnon and separately joined by Chief Justice McGrath (a combined majority of the Court):

> MCC was not merely negligent in its failure to act; rather, in strategically recognizing the latency period for asbestosis to develop, MCC engaged in affirmative actions to conceal the asbestos exposure risk and worker injuries to avoid liability, effectively increasing the risk of additional harm to Mill workers from further asbestos exposure.

MCC v ACC at par. 80.

10.    Zurich's clear liability to Plaintiffs and Plaintiffs' decedents is established because they are workers who were exposed to asbestos during the time period when MCC provided professional safety and medical services and safety program (July 1, 1963 – June 30, 1973).

11.    Despite repeated requests for advance payment of medical care expenses of Worker Group Plaintiffs for their asbestos- related diseases, Zurich has made no payments or offers of advance payments.

12.    Despite repeated requests for reasonable settlement of the Accrued Claims, Zurich has not made a reasonable offer to the Plaintiffs, collectively or individually, and has made no attempt whatsoever to settle the Accrued Claims of the Plaintiffs in the Worker Group. Zurich has further attempted to condition any settlement negotiations with respect to Accrued Claims upon the requirement that the Plaintiffs must also settle and release any claim for breach of Zurich's separate breach claim settlement duties, another form of unfair leverage.

13.    At no time has Zurich done any of the following:

    a.  made or attempted sufficient investigation of any of the Accrued Claims to reasonably evaluate the claimed damages or medical expenses;

    b.  Made any settlement offers, settlement contribution offers, or payments toward the satisfaction of any of the Working Group Plaintiffs' Accrued Claims;

    c.  Attempted to negotiate a reasonable settlement of any of the Working Group Plaintiffs' Accrued Claims; or

    d.  Made any settlement, payment or advance payment of any medical care expense or wage loss amounts for any of the Accrued Claims.

14.    These actions and failures of Zurich occurred and continue while Plaintiffs suffered and continue to suffer uncompensated losses for their injuries and the resulting economic burdens, health care liens, and health care needs resulting from such injuries.

15.    Because of the failures of Zurich to do the required investigation, settlement offer or negotiation, or make advance payments, each Plaintiffs have been and continue to be subject to unfair exploitation of their position of disadvantage including their economic, medical care lien, and health care related difficulties arising from the injuries described in the Accrued Claims.

16.    Zurich knew and knows the exploitation effect suffered by each Plaintiff and it acted and continues to act (a) with an intent to take advantage of each Plaintiff's disadvantaged position during the settlement negotiations, (b) with intent and knowledge of the levering effect of its conduct, (c) in conscious disregard of the known and intended injury to and leverage of each Plaintiff, and (d) with intent that the exploitation effect would decrease or delay its liability exposure, and result in profits on invested float.

17.    At no time has Zurich attempted in any way to lessen the impact on the Plaintiffs from the exploitation effect, or engaged in good faith, meaningful participation in the settlement negotiations over the Accrued Claims.

18.    Zurich has calculated to take advantage of the earnings it makes on the delayed claim expense at the expense of the Plaintiffs.

19.    Zurich has continued to pursue a claim delay strategy by taking no action to investigate, quantify, or offer or make any advance payment or even conditional offer of medical care expenses or wage losses though (a) it knows and knew liability was and is reasonably clear, and (b) its pretextual and technical defenses have been consistently rejected by the District Court and Montana Supreme Court rulings and a jury verdict.

First Cause of Action<br>
(for Declaratory Ruling whether 33-18-201, MCA, Permits an Insurer to Transfer<br>
Claim Control to a Third Party Equity Firm, and Appropriate Injunctive Relief)

20.    All preceding allegations are hereby incorporated in this cause of action.

21.    Insurance serves an essential function in society and pervasive and critical role in the economy.

> [I]nsurance is an industry that is vested with public interest. The economic well-being of every citizen is strongly affected by the adequacy of their insurance protection and how much they pay for it. Consequently, the government has become closely involved in mandating, providing and regulating insurance.

A Regulator's Introduction to the Insurance Industry.

22.    As distinguished from "speculative risk" (such as gambling) wherein economic **gain** can arise from a contingent outcome, insurance only addresses the

"pure risk" arising from "uncertainty about whether a financial **loss** will occur." *Id;*

*Section* 33-1-201 (6), MCA.

23.    As explained in and I.R.S.  Private Letter Ruling 200711017, "retroactive

reinsurance" of fully accrued claims does not meet the characteristics of insurance:

> Insurance is not the mechanism to manage losses that are at least
> substantially certain to occur, i.e., that are not the result of fortuitous
> events. This principle has various labels, and "embod[ies] the concept
> that one may not obtain insurance for a loss already in progress, or for
> a loss that the insured either knows of, planned, intended, or is aware is
> substantially certain to occur." 43 Am. Jur. 2d *Insurance*, § 479 (2005);
> see also COUCH ON INSURANCE 3d, § 102:8 (1997). Put another
> way, "[t]he fortuity principle is central to the notion of what constitutes
> insurance. The insurer will not and should not be asked to provide
> coverage for a loss that is reasonably certain or expected to occur within
> the policy period." 1 APPLEMAN ON INSURANCE 2d, § 1.4.

24.    By reason of the public policy need to assure that insurance serves its

appropriate function, Montana has adopted common law rules and the Montana

Insurance Code which define and regulate the duties of insurers to handle claims

when an insured loss has occurred, and an accrued claim is presented for

indemnification or payment. 33-18-201, MCA.

25.    When an insured loss has occurred and an accrued clear liability claim is made

therefore, the duties attendant to such claim are not an insurable risk – the

contingency having already occurred. Nor is an insurance claim an investment

commodity. Rather, the insurer who delegated the indemnity and claim handling

duties through insurance (including self-insurance) is required by Montana law to

timely ("promptly") effectuate settlement, make advance payments of certain losses, and not use unfair leverage to take advantage of a vulnerable claimant.

26.    In derogation of its claim settlement duties, Zurich has sold non-contingent claim liability – including a portion of the Accrued Claims of the Plaintiffs herein - to one or more buyers including a buyer (Enstar/ Enstar Group, Ltd.) that is an offshore limited liability company or other "Enstar"-related entity, and Zurich has delegated to the buyer(s) to manage, control and direct claim management, settlement, and litigation strategies. This scheme is not insurance at all, it is a vehicle for turning human suffering into an investment commodity.

27.    Zurich has made such accrued claims and the attendant settlement and claim handling duties a commodity of speculative risk whereby the investing buyer(s) uses the "float" on future payment of accrued claims to broker economic investment gain. Instead of an "insurance" system of protection for pooled pure risk which secures the public benefit of the insurance industry with respect to losses, Zurich's sale of non-contingent claim liability and delegation of claim handling and settlement functions has monetized the Accrued Claims and has created an unregulated incentive by which speculation is rewarded by delay of claim payment so as to maximize the buyer's "float" return.

28.    By such sale and delegation of control, Zurich evades and systematically breaches and undermines its common law and statutory claim settlement duties with

respect to the Accrued Claims. In contrast to a contract with an independent claim adjustment entity, the primary if not only financial compensation or reward for the interested third-party buyer is the investment earnings it generates on money withheld from claimants with mature accrued claims.

29.    Plaintiffs are entitled to a declaratory ruling that Section 33-18-201, MCA prohibits any action or actions in concert or cooperation with a third-party buyer, which delegates or impairs Zurich's exclusive control over common law and statutory claim handling and claim settlement duties owed to clear liability Montana claimants.

30.    Plaintiffs are entitled to a declaratory ruling that all actions creating an incentive for a third-party buyer to withhold or delay advance payments, or to delay, lowball, and unfairly lever resolution of such claims for speculative return on the "float" violate Montana public policy.

31.    Because, by its sale and delegation of control, Zurich evades and breaches its common law and statutory claim settlement duties with respect to the Accrued Claims, Zurich should be enjoined not to cooperate or discuss with any third-party buyer the resolution of the settlement and advance payment obligations owed to Montana claimants with accrued personal injury claims against Zurich.

32.    Because, by its sale and delegation of control, Zurich evades and breaches its common law and statutory claim settlement duties with respect to the Accrued

Claims, Zurich should be enjoined not to recover from any third-party buyer any direct or indirect money or benefit with respect to settlement or advance payment amounts on any claim of a Montana claimant with accrued personal injury claims against Zurich, until such time as Zurich has secured a settlement of such personal injury claim in a manner that is not disclosed to the third-party buyer.

33.    Because it is against Montana public policy to obtain indemnification for unlawful conduct, Zurich should be enjoined not obtain any reimbursement, consideration or other benefit from a third-party buyer for any liability Zurich may have to Montana claimants for violation of Montana common law and statutory claim settlement duties.

34.    Because Zurich should not be permitted to evade liability for violations of Section 33-18-201, MCA, it should be enjoined not to condition (or demand or offer a condition to) the settlement of any personal injury claim of a Montana claimant with accrued personal injury claims against Zurich, on a requirement that the settling Montana claimant release claims for this violation of Montana common law and statutory claim settlement duties.

<u>Second Cause of Action</u>
<u>(for Declaratory Ruling that Section 33-18-201 and Common Law Claim Adjustment Duties Require Zurich to Make Advance Payment of Medical Care Expenses, and Appropriate Ancillary Relief)</u>

35.    All preceding allegations are hereby incorporated in this cause of action.

36.    Despite repeated requests for advance payment of medical care and/or wage loss expenses of such workers, Zurich has made no payments or offers of payments to the Plaintiffs.

37.    Zurich has refused to make advance payments upon several contentions including that it is not an insurance company. A ripe controversy is therefore presented as to whether Montana law, including 33-18-201, MCA and *Ridley v. Guarantee Nat'l Ins. Co.* and progeny, require Zurich to make advance payments.

38.    Plaintiffs are entitled a declaratory ruling that 33-18-201, MCA and *Ridley v. Guarantee Nat'l Ins. Co.* and progeny require that Zurich make advance payment of medical care expenses reasonably demonstrated to have been incurred for screening, diagnosis, treatment of and care required for diseases caused by asbestos exposures while working at the Libby mill.

39.    Zurich has withheld and continues to withhold medical care payments as the Worker Group Plaintiffs and their decedents have incurred and continue to incur staggering expenses attendant to end stage asbestosis or lung cancer.

40.    Plaintiffs are entitled to a declaratory ruling that, under Montana law, an impermissible claim leverage is created by Zurich's failure to pay, make any offer to pay, or make investigation of the amounts of medical care expenses, even as Zurich seek to secure these Plaintiff's release of all claims,

and that Zurich's conduct constitutes malice within the meaning of Section 27-1-221, MCA.

41.   Plaintiffs are entitled to a declaratory ruling that conditioning settlement and offers of settlement of personal injury claims (including the Accrued Claims) upon the claimants' release of separate claims for breach of claim settlement practices duties is a violation of the claim settlement duties attendant to the personal injury claim.

42.   Plaintiffs are entitled to ancillary relief which will effect immediate advance payment of lost wages, medical, and home and hospice care expenses.

WHEREFORE PLAINTIFFS PRAY FOR THE FOLLOWING RELIEF:

1.   Declaratory ruling that Section 33-18-201, MCA, and/or Montana common law prohibits Zurich from taking any action actions in concert or cooperation with a third-party buyer, by which Zurich's exclusive control over common law and statutory claim handling and claim settlement duties owed to clear liability Montana claimants is delegated, impaired or influenced by a third party buyer that has an investment incentive to delay claim resolution.

2.   Declaratory ruling that Section 33-18-201, MCA and/or Montana common law prohibits Zurich from taking any action or actions in concert or cooperation with a third-party buyer by which an profit incentive for a third-

13

party buyer is created to withhold or delay advance payments, or to delay, lowball, or unfairly lever resolution of such claims for speculative return on the "float," while insulated from the non-delegable adjustment duties and regulation attaching to Zurich as insurer/self-insurer of the claims when they accrued.

3. Declaratory ruling that actions by Zurich, which create an incentive for a third-party buyer to withhold or delay advance payments, or to delay, lowball, and unfairly lever resolution of such claims for speculative return on the "float" violate Montana public policy.

4. An order enjoining Zurich not to cooperate with or discuss with any third-party buyer (a) the resolution of accrued Montana liability claims against Zurich, or (b) Zurich actions to conform to the non-delegable settlement duties and advance payment obligations owed to Montana claimants with accrued personal injury claims against Zurich.

5. An order enjoining Zurich not to recover from any third-party buyer any settlement or advance payment amounts on any claim of a Montana claimant with accrued personal injury claims against Zurich, until such time as Zurich has secured a settlement of such personal injury claim in a manner that is not disclosed to the third-party buyer.

6. An order enjoining Zurich not to obtain, directly or indirectly, any reimbursement, consideration, or other benefit from a third-party buyer for any liability to Montana claimants Zurich may have for violation of Montana common law and statutory claim settlement duties.

7. An order enjoining Zurich not to condition, demand a condition, or offer a condition to, the settlement of any personal injury claim of a Montana claimant with accrued personal injury claims against Zurich, upon a requirement that the settling Montana claimant release claims for any violations of Montana common law and statutory claim settlement duties.

8. A declaratory ruling that Montana statutory and common law claim settlement duties prohibit the following conduct with respect to the Accrued Claims: (a) failures to advance pay medical care and lost wage expenses, (b) failures to make any offer to pay such expenses, (c) failures to investigate the amounts of such expenses, (d) withholding or delaying settlement, (e) levering, or exploiting claimant's position of disadvantage by reason of the claimant's medical and/or economic needs and (f) conditioning settlement on release of separate claims for breach of claim settlement practices, and that such failures, withholding, delaying, levering exploiting, and conditioning, and each

of them constitute malice within the meaning of Section 27-1-221, MCA.

9. Injunctions and other ancillary relief (including interest and attorney fees) which will effect immediate advance payment of medical, and home and hospice care expenses arising from workers' exposures to asbestos at the W.R. Grace mine and mill between July 1, 1963 and June 30, 1973.

10. Such other and further equitable and legal relief as is appropriate in the circumstances.

DATED this 21st day of March, 2022.

McGARVEY LAW

 /s/  Allan M. McGarvey
Allan M. McGarvey
*Attorney for Plaintiff*

16

Exhibit A

**LIVING PLAINTIFFS**

| | |
|---|---|
| Ludwig, | Larry |
| Orsborn, | Carl |
| Kley, | Victor |
| Swenson, | David |
| Sevre, | Jimmie |
| Schull, | Billie |
| Wood, | Richard |
| Jensen, | Jack |
| Stacy, | James |
| Smith, | James |
| Knopp, | Gordon |
| Jellesed, | Terry |
| Moss, | Kenneth |
| Vinson, | Harvey |
| Fincher, | Jerry |
| Widic, | Franklin |
| Starke, | John |

**PERSONAL REPRESENTATIVE PLAINTIFFS FOR DECEASED WORKERS**

Louis Baenen - PR Loretta Cook
Bruce Baker - PR Frances Baker
Robert Barnes - PR Virginia Huth
Michael Brooks - PR James Brooks
Arthur Caudill - PR Michael Caudill
James Cohenour - PR David Cohenour
Donald Doubek - PR Darrell Doubek
Robert Fuller - PR Thomas Fuller
John Garrison - PR Nikki Reynolds
Edward Gaston - PR Susan Grenfell
Orville Johnson - PR Brenda Neuman Brunscher
Donald Johnson - PR Donald W. Johnson
Donald Kaeding - PR Louise Kaeding
Kenworthy - PR Deborah Bunker
Luther Krupp - PR Kristine Krupp Lucas
Jimmie Lyle - PR Michael Norman
Robert Mack - PR Linda Shaw
Wiliam Noble - PR Melissa Williams
Elmore Richey - PR Colleen L. Johnson
Michael Ryan, Sr - PR Judith Ryan (decd)
Robert Schultz - PR James Schultz
David Shelton - PR Arla Shelton
Donald Smith - PR Calvin Smith
Vernon Swanson - PR Paula Swanson-Dorr
Ivan Troyer, Sr - PR Ira Troyer
Richard Viereck - PR Patty Jo Viereck
Edgar Warner - PR Scott Warner
Harold Wilburn - PR Linda Masterson
Ronald Woller - PR Judy Woller